

USDC- BALTIMORE
'22 DEC 19 AM 11:47

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

| | | | |
|---|---|---|---|
| *Aaron S.J. Zelinsky*<br>*Assistant United States Attorney*<br>*Aaron.Zelinsky@usdoj.gov* | *Mailing Address:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *Office Location:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *DIRECT: 410-209-4928*<br>*MAIN: 410-209-4800* |

October 19, 2022

Shari Darrow, Esq.
100 South Charles St.,
Suite 900
Baltimore, MD 21201

      Re:    United States v. Dana Hayes, Crim. No: CCB-22-224

Dear Counsel:

      This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Dana Hayes (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by November 28, 2022, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

      1.    The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with Wire Fraud, in violation of 18 U.S.C. § 1343. The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

      2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland the defendant

      a.    knowingly devised or intended to devise a scheme or artifice to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations or promises;

      b.    acted with intent to defraud; and

      c.    That in advancing, furthering, or carrying out the scheme, transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

Rev. August 2018

## Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. 1343 | N/A | 30 years | 5 years | $1,000,000 | $100 |

    a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

  a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

  b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

  c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

  d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

  e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

## Count One

a. This Office and the Defendant further agree that the applicable base offense level is 7 (seven) pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(a)(1).

b. This Office and the Defendant further agree that there is a 6 (six) level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(D) because the loss amount was more than $40,000 but less than $95,000.

c. This Office does not oppose a 2 (two) level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

    d.  Thus, the final anticipated adjusted offense level **11.**

  7.  There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

  8.  Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Obligations of the Parties

  9.  At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Information. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

  10.  In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a.  The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

    b.  The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

      i.  The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

      ii.  This Office reserves the right to appeal any sentence below a statutory minimum.

  c.  The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

11.  The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

12.  Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities: a money judgment in the amount of $50,036.00 in U.S. currency minus any payments made towards the loans at the time of sentencing. Payments made toward restitution will also count towards any outstanding balance due under an Order of Forfeiture.

13.  The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14.  The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

15.  The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Collection of Financial Obligations

16.  The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit

report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. If restitution is not paid by the date of sentencing, in order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. If restitution is not paid by the date of sentencing, the Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that any financial statement and disclosures the Defendant submits will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C.§ 1001 by an additional five years' incarceration and fine.

### Defendant's Conduct Prior to Sentencing and Breach

17. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Restitution

19. The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation, which the parties stipulate is at least $50,036.00 minus any payments made to the loans at the time of sentencing. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment

schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Court Not a Party

20. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

21. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

Digitally signed by AARON ZELINSKY
Date: 2022.10.19 13:49:46 -04'00'

Aaron S.J. Zelinsky
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/21/22
Date

_Dana Hayes_
Dana Hayes

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

10/21/22
Date

Shari ~~Darrow~~ Derrow, Esq.

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Defendant Dana Hayes, born January 1985, is a resident of Baltimore, Maryland. Beginning in March 2020 and continuing until in or around April 2022, in the District of Maryland, Defendant engaged in a scheme to defraud two financial institutions, Banks 1 and 2, to obtain fraudulent loans for D&L Investment Properties Inc. ("D&L"), under the Paycheck Protection Program (PPP) and the Economic Injury Disaster Loan ("EIDL") program, part of the Coronavirus Aid, Relief, and Economic Security (CARES) Act enacted in or around March 2020. Ultimately Hayes fraudulently obtained $50,036 as part of this scheme. His offense is described in more detail below.

### EIDL Loans

On December 18, 2018, Hayes was arrested in Baltimore City for possession of a stolen firearm, a Glock pistol. On April 30, 2019, Hayes was placed on probation for the firearm offense. HAYES began monthly reporting to the Maryland Department of Public Safety and Correctional Services Probation Office ("Maryland Probation").

On March 26, 2020, Maryland Probation called Hayes and told him not to report in person on March 27, 2020, because of the COVID pandemic. Hayes was instructed that the telephone calls would suffice for his regularly scheduled monthly probation appointment. Hayes was directed to contact Maryland Probation by telephone for his next monthly appointment in April.

On or about March 31, 2020, Hayes applied online for an EIDL loan on behalf of D&L. As part of the loan application, Hayes stated that he was the CEO and 80% owner of D&L, and that D&L had 3 employees as of January 31, 2020.

The application also asked: "For any criminal offense . . . have you ever been convicted, plead guilty, plead nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation (including probation before judgment)?" HAYES answered, "no." Hayes also checked a box indicating "I would like to be considered for an advance of up to $10,000."

The application contained a statement: "CERTIFICATION AS TO TRUTHFUL INFORMATION: By signing this application, you certify that all information in your application and submitted with your application is true and correct to the best of your knowledge, and that you will submit truthful information in the future."

The application further stated: "WARNING . . . [A]ny false statement or misrepresentations to the SBA may result in criminal, civil, or administrative sanctions including, but not limited to: 1) fines and imprisonment, or both under 15 U.S.C. 645, 18 U.S.C. § 1001, 18 U.S.C. § 1014, 18 U.S.C. § 3571, and or any other applicable laws." Hayes's application was denied.

For the next approximately eighteen months, Hayes regularly contacted the SBA in attempt to have his EIDL application granted after it had been initially declined. For example, on May 29, 2020, Hayes wrote a letter to the SBA identifying himself as the CFO of D&L, and stated that he "disagreed with the decision of denial" of the EIDL application. In support of reconsideration of the EIDL application, Hayes stated that, "My salaries a month is 5,000 . . . my expenses are salaries of 15,000, equipment and supplies of 35,000 . . . Please take my application under reconsideration as I made these errors under a panicking state of mind. COVID-19 has really affected my business and my errors have put my employees and their families lives in financial danger." Contrary to this statement, D&L never had any employees.

In September 2021, D&L's EIDL application was granted and two deposits were made into D&L's bank account totaling $15,000. Hayes immediately transferred all of the EIDL funds from D&L's bank account to his personal savings account.

### Fraudulent First Draw PPP Loan (June 2020)

On June 22, 2020, Hayes applied for a $12,500 PPP loan with Bank 1 on behalf of "D&L Investmetn" [sic] using the Employer Identification Number (EIN) for D&L and his home address. As part of the application, Hayes filled out a borrower application form that listed himself as the "CFO" of D&L. Hayes also attached an IRS Schedule K-1 listing himself as a 50% owner of D&L.

The PPP loan application contained eight questions. Written above Questions 5 and 6, underlined and in italics, was the statement: *"If questions (5) or (6) answered "Yes," the loan will not be approved."*

Question 5 stated: "Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?"

Hayes checked the answer box for Question 5 "no" and initialed confirming his response. In truth and Hayes was on probation at the time he answered the question.

On the application Hayes stated that D&L had four employees with an average monthly payroll of $5,000. HAYES also attached an IRS Form W-3 to the application purporting to show that D&L had paid $60,000 in wages in tax year 2019. That Form W-3 was fraudulent and never filed with the government.

Hayes also certified that: "The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC." Hayes certified by placing his initials next to the statement. However, D&L never paid any individual a salary, nor did D&L ever file any Form 1099-MISCs with the IRS.

Hayes further certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally-insured

Rev. August 2018

11

institution, under 18 USC 1014 by imprisonment of not more than thirty years or a fine of not more than $1,000,000." Hayes certified this statement by placing his initials next to the statement.

Hayes's application was subsequently approved and $12,500 was transferred from Bank 1 to D&L's bank account on June 24, 2020. The same day, Hayes transferred the full amount of the loan proceeds, $12,500, from the D&L bank account into his own personal savings account.

### Fraudulent Second Draw PPP Loan (January 2021)

On January 22, 2021, Hayes applied for a second draw PPP loan from Bank 2. On the application form, Hayes claimed that D&L had five employees and a monthly payroll of $9,014.58.

Hayes also attached a 2019 IRS Form 941 to the application purporting to show that D&L had 5 employees and an annual payroll of $240,000. This 2019 IRS Form 941 was fraudulent. D&L never filed a Form 941 for tax year 2019, or any other tax year.

The fraudulent Form 941 also contained the PTIN number belonging to a professional tax preparer, J.A. A PTIN (Preparer Tax Identification Number) is a unique number issued by the IRS to professional tax preparers. A PTIN is used as the tax return preparer's identification number. J.A. had previously been hired by HAYES to prepare both his individual tax returns and the returns for D&L, but J.A. never prepared any Form 941s for D&L. Nor did J.A. authorize Hayes to use J.A.'s PTIN on the fraudulent 2019 Form 941 HAYES submitted to Bank 2.

The PPP loan also required Hayes to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000, and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000." Hayes placed his initials next to the statement and electronically signed the document on February 22, 2021.

The PPP loan was subsequently approved, and on February 24, 2021, $22,536.00 was deposited into D&L's business account. That same day, Hayes transferred $22,500.00 from D&L's business account to his personal savings account.

### Additional Fraudulent PPP Loan Application to Bank 1

On January 22, 2021, HAYES called Bank 1 regarding a second draw PPP loan application he was working on for D&L, seeking technical assistance. From January 22, 2021, through March 10, 2021, Bank 1 requested additional supporting documentation from HAYES for the loan application. In this time period, HAYES submitted the same fraudulent Form 941 to Bank 1 as he had to Bank 2.

47. HAYES also submitted a fraudulent Form W-2 to Bank 1 in an attempt to obtain another PPP loan. The fraudulent W-2 purported to show Hayes receiving $200,000 income from D&L in 2019. However, HAYES left the address for his then-current employer, Company 1, on the fraudulent W-2, rather than the D&L business address. And Hayes included Company 1's EIN rather than D&L's EIN on the fraudulent W-2. Hayes's tax records for tax year 2019 do not indicate any income from D&L. Rather, Hayes claimed a net loss of $15,905 from D&L on his 2019 federal taxes.

Ultimately, Bank 1 did not extend this second draw PPP loan to HAYES.

**First Draw Loan Forgiveness Application**

On October 15, 2021, Hayes forfeited incorporation for D&L.

On November 4, 2021, Hayes applied on behalf of D&L to Bank 1 for PPP loan forgiveness for the first draw loan. Hayes falsely stated in the application that D&L had five employees at the time of loan forgiveness and that he had spent the entire loan amount, $12,500, on payroll costs.

Hayes also certified that the information in the forgiveness application was "true and correct in all material respects" and that "knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

Hayes's forgiveness application was not approved.

On January 22, 2022, HAYES received an email from Bank 1 informing him that he had a minimum repayment due on his first draw PPP loan of $293.08. Hayes did not make any payment.

On February 1, 2022, Hayes applied to become the Chief of Fiscal Services for the Baltimore City Police Department.

On February 22, 2022, Hayes received an email from Bank 1 informing him that he had a minimum repayment due on his first draw PPP loan of $600.72. Hayes did not make any payment.

On March 22, 2022, Hayes received an email from Bank 1 informing him that he had a minimum repayment due on his first draw PPP loan of $908.36. Hayes did not make any payment.

On April 11, 2022, Hayes was hired by the Baltimore City Police Department as Chief of Fiscal Services.

On April 19, 2022, Hayes was terminated as Chief of Fiscal Services.

On April 22, 2022, Hayes received an email from Bank 1 informing him that he had a minimum repayment Pdue on his first draw PPP loan of $1216.00. HAYES did not make any repayment.

Hayes executed the fraud scheme discussed herein, in part, through the use of mobile phones, the internet, email accounts, and bank deposits and transfers, all of which used interstate wires, and Hayes was in Maryland when he transmitted wires to execute his scheme.

For example, on June 22, 2020, as discussed above, Hayes applied for a $12,500 PPP loan with Bank 1 on behalf of "D&L Investmetn" [sic] via an online portal using a computer. At the time of the application Hayes was located in Maryland and Hayes caused the application to be transmitted by wire to Bank 1's servers, located outside Maryland.

SO STIPULATED:

_____
Aaron S.J. Zelinsky
Assistant United States Attorney

_____
Dana Hayes
Defendant

_____
Shari ~~Darrow~~, Esq.
Derrow